UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| Brenda Gonzalez, | Case No. 2:12-cv-02143-RFB-CWH |
|---|---|
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| Nevada Department of Corrections, | |
| Defendant. | |

Plaintiff Brenda Gonzalez began working for the Nevada Department of Corrections ("NDOC") on or about October 18, 2010.  Compl. ¶ 10, ECF No. 1.  On November 10, 2010, NDOC terminated Gonzales's employment.  Compl. ¶ 22.  Gonzalez claims she was subject to discrimination and harassing statements during her employment.  Id.  She further claims that she received disparate treatment and was ultimately terminated because she was a female in a male-dominated workplace.  Compl. ¶¶ 19, 33.  Before for Court is Defendant's Motion for Summary Judgment (the "Motion"), ECF No. 23.  For the reasons discussed below, this Motion is granted in part and denied in part.

I.     BACKGROUND

    A.  Procedural

On September 27, 2012, Gonzalez received a Right to Sue Notice from the Equal Employment Opportunity Commission.  ECF No. 1-3.  On December 17, Gonzalez filed a Complaint in this Court.  ECF No. 1.  In her Complaint, Gonzalez alleged six causes of action (numbered 1–7, skipping 6): Gender Discrimination, Public Policy Tort, *Respondeat Superior*, Negligent Hiring, Supervision, and/or Training of Employees, Gender Origin Discrimination

1  pursuant to NRS 613.330, et. al., and Intentional Infliction of Emotional Distress.[1]

2  On January 10, 2013, NDOC filed a Motion to Dismiss.  ECF No. 6.  The Motion to
3  Dismiss was denied on February 19, 2013.  ECF No. 10.

4  On May 28, 2014, NDOC filed the instant Motion.  Mot. for Summ. J., ECF No. 23.  On
5  April 24, 2015, the Court heard oral argument on the Motion (the "Hearing").  ECF No. 29.  This
6  Order follows.

### B.  Undisputed Facts

Associate Warden Renee Baker and Caseworker Specialist III Claude Willis interviewed Gonzalez for the position of caseworker specialist trainee.  Decl. of Renee Baker ¶ 3, ECF No. 23-1.  Gonzalez a member of a protected class (gender) and was qualified for this position.  Reply 2:19–21, ECF No. 26.  At the interview, Willis told Gonzalez that she "was a moderately attractive young woman, and he's not sure how that's going to work in a prison setting."  Gonzalez Dep. 69:20–25.  Gonzalez was hired by NDOC as a caseworker specialist trainee on October 18, 2010.  Gonzalez Dep. 9:25–10:7, ECF No. 24-1.  Claude Willis was Gonzalez's supervisor.  Gonzalez Dep. 20:6–18.

On October 21, 2010, Willis warned Gonzalez regarding wearing a blue blouse.  Charge of Discrimination, ECF 1-2; Gonzalez Dep. 21:4–23:23; see Decl. of Claude Willis, ECF No. 23-7.  This verbal warning was retracted and Gonzalez suffered no consequences as a result of the verbal warning.  Gonzalez Dep. 27:10–28:8, 44:13–45:6, ECF No. 23-2; Decl. of Renee Baker ¶ 7, ECF No. 23-1; Decl. of Claude Willis, ECF No. 23-7.  This retraction of the verbal warning took place the day after the warning, prior to the filing of any complaint, when Gonzalez notified Associate Warden Renee Baker of the matter.  Gonzalez Dep. 20:14–15, ECF No. 23-2; Decl. of Claude Willis, ECF No. 23-7.  At that time, October 22, 2010, Associate Warden Baker informed Gonzalez that she was allowed to wear blue. Gonzalez Dep. 27:5–28:8.

On or about October 25, 2010, Gonzalez was placed on administrative duty.  Decl. of E.K. McDaniel ¶ 3, ECF No. 23-6.  Gonzalez did not experience a reduction in pay or benefits as

---

[1] To maintain consistency with the Complaint, the Court will refer to the claim for intentional infliction of emotional distress as the "seventh" cause of action.

1  a result of being placed on administrative duty; Gonzalez's training continued and she was given
2  caseworker duties while on administrative duty. Gonzalez Dep. 42:7–43:12, 49:16–50:1.
3  Gonzalez was prevented from being around the other correctional officers and was not permitted
4  to go into the prison facility where the other caseworkers worked. Gonzalez Dep. 39:1–16,
5  41:6–22; see Decl. of James Cox ¶ 5, ECF No. 23-5. While discussing her assignment to
6  administrative duty, Sergeant Wagner told Gonzalez that she "was placed on administrative duty
7  because they didn't want [her] amongst the other correctional officers," told her that she was
8  "walking on eggshells," referred to the dress code, and measured her heels with a measuring
9  tape. Gonzalez Dep. 67:16–68:13; 76:9–23. He then informed her that her heels should be
10 under one inch. Gonzalez Dep. 77:7–21.
11      Gonzalez was rejected from probation (employment terminated) on November 10, 2010.
12 Decl. of E.K. McDaniel ¶ 7, ECF No. 23-6. Gonzalez was placed on administrative duty and
13 ultimately terminated without NDOC confirming or asking whether Gonzalez was aware that a
14 person with whom she was associating was a federal parolee and also without considering any
15 supervisor's evaluations of her performance. Aff. of Brenda Gonzalez ¶ 10; Decl. of James Cox
16 ¶¶ 7–11.
17
18 **II.    LEGAL STANDARD**
19      Summary judgment is appropriate when the pleadings, depositions, answers to
20 interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no
21 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
22 law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When
23 considering the propriety of summary judgment, the court views all facts and draws all
24 inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch.
25 Dist., 658 F.3d 954, 960 (9th Cir. 2011). Where the party seeking summary judgment does not
26 have the ultimate burden of persuasion at trial, it "has both the initial burden of production and
27 the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine
28 Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

1         "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Id.  If it fails to carry this initial burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  Id. at 1102-03.  If the movant has carried its initial burden, however, "the nonmoving party must produce evidence to support its claim or defense."  Id. at 1103.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).  However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists.  Nissan Fire, 210 F.3d at 1102.

A plaintiff alleging employment discrimination "need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry--one that is most appropriately conducted by a factfinder, upon a full record."  Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1124 (internal quotation marks omitted).  In the context of employment discrimination cases the Ninth Circuit has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses."  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112 (9th Cir. 2004).

III.    DISCUSSION

A. Evidence Admissibility

The party seeking the admission of documents on motion for summary judgment bears the burden of proof to show their admissibility.  Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1051 (9th Cir. 2012).  Litigants submitting summary judgment motions, oppositions, or

- 4 -

1  replies must ensure that any evidence submitted with such briefs is properly authenticated and
2  not merely appended to or submitted with the brief.  Orr v. Bank of Am., NT & SA, 285 F.3d
3  764, 773 (9th Cir. 2002) ("We have repeatedly held that unauthenticated documents cannot be
4  considered in a motion for summary judgment."); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d
5  1179, 1181 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered
6  by the trial court in ruling on a motion for summary judgment.").

7  Here, Exhibit J, attached to NDOC's Reply, purports to be the deposition of Renee Baker.
8  ECF No. 26-1.  However, this purported deposition is supported by neither a reporter's
9  certification nor any other form of authentication.  Thus, Exhibit J, ECF No. 26-1, is presently
10 inadmissible and will not be considered.

11 **B.  State Law Claims and Punitive Damages**

12 In her Complaint, Gonzales makes several claims for monetary damages based in state
13 law.  In the Motion, NDOC argues that, because NDOC is a state agency, Gonzalez's state law
14 claims for negligent hiring and supervision,  intentional  infliction  of emotional distress, and
15 discrimination pursuant to N.R.S § 613.310 et seq. are barred by the Eleventh Amendment.  Mot.
16 for Summ. J. 23–24; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  These state
17 law claims underlie Gonzalez's second, fourth, fifth, and seventh causes of action.  Compl. ¶¶
18 45–50, 56–72.

19 In her Response, Gonzalez did not address or oppose NDOC's argument that she was
20 barred from pursuing the state claims.  At the Hearing, the Court asked Gonzalez's attorney if
21 she wished to withdraw to withdraw with prejudice the second, fourth, fifth, and seventh causes
22 of action.  Gonzalez's attorney affirmed that Gonzalez did withdraw the state claims with
23 prejudice.

24 Similarly, NDOC argues that, because NDOC is a state agency, punitive damages are not
25 available under Title VII.  Mot. for Summ. J. 25; see also 42 U.S.C. § 1981a(b)(1).  Again,
26 Gonzalez did not address or oppose NDOC's argument regarding the unavailability of punitive
27 damages, and, again, at the hearing the Court asked and Gonzalez's attorney confirmed that
28 Gonzalez was conceding the matter.

Accordingly, the Court holds that the Gonzalez has withdrawn her second, fourth, fifth, and seventh causes of action and her claims for punitive damages. Consequently, the Court does not address summary judgment of these matters.

**C. Gender Discrimination Claim**

Gonzalez's first cause of action for gender discrimination encompasses allegations of disparate treatment and of hostile work environment under Title VII of the Civil Rights Act of 1964. For the reasons discussed below, summary judgment for NDOC on this cause of action is granted in part and denied in part.

**1. Disparate Treatment**

There are two approaches applicable to the analysis of disparate treatment; when responding to a summary judgment motion, a plaintiff "may proceed by using the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the Employer]." McGinest, 360 F.3d at 1122. Here, Gonzalez has exclusively argued within McDonnel Douglas framework. Resp. 11–13, ECF No. 24. To establish a prima facie case under McDonnell Douglas, a plaintiff must show that "(1) he belonged to a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment." Anthoine v. N. Cent. Counties Consortium, 605 F.3d 740, 753 (9th Cir. 2010). "[A]n adverse employment action is one that materially affect[s] the compensation, terms, conditions, or privileges of ... employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (alterations in original) (internal quotation marks omitted).

If the plaintiff demonstrates a prima facie case, the burden shifts to the defendant employer to provide a non-discriminatory reason for the action. Id. If the defendant makes such a showing, the burden shifts back to the plaintiff to prove discrimination by showing that the employer's proffered reason is pretextual. Id.

. . .

. . .

1         This pretext may be established by "offering direct or circumstantial evidence that a discriminatory reason more likely motivated the employer, or that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." Id. (internal quotation marks omitted).

         Here, in the Motion, NDOC identifies six possible alleged incidents of adverse employment action. Mot. for Summ. J. 10:7–13, ECF No. 23. In her Response, Gonzalez argues only that the issuance of a verbal warning for the wearing of a blue shirt and her placement on administrative duty were adverse employment actions. Response 13:9–24, ECF No 24. There is no dispute that Gonzalez is a member of a protected class and that she was qualified for her position. Reply 2:19–21, ECF No. 26.

### a. Employment Termination

         First, although neither the NDOC nor Gonzalez specifically address the question, the Court finds that the termination of Gonzalez's employment is an adverse employment action.

         However, with regards to termination, Plaintiff has simply presented no evidence whatsoever regarding the termination or non-termination of any other NDOC employees similarly situated or reasonably similarly situated. Absent any such evidence, the Court may only hypothesize about how a similarly situated male individual might have been treated, and at the motion for summary judgment stage, such unsubstantiated conjecture is inadequate.

### b. The Verbal Warning for Wearing a Blue Shirt

         The issuance of the verbal warning for wearing a blue shirt does not constitute an adverse employment action. The undisputed facts demonstrate that the verbal warning was retracted and that Gonzalez suffered no consequences as a result of the verbal warning. Gonzalez Dep. 27:10–28:8, 44:13–45:6, ECF No. 23-2; Decl. of Renee Baker ¶ 7, ECF No. 23-1; Decl. of Claude Willis, ECF No. 23-7.

         Rather than dispute the retraction, Gonzalez argues that the retraction is ineffective because "[c]urative measures simply do not tend to prove that a prior violation did not occur." Resp. 13:10–14, quoting Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d 1115, 1130 (9th Cir. 2000). Chuang, however, is inapposite, as the curative measures at issue there

- 7 -

1  were specifically and importantly post-complaint.  Id. (citing Lam v. Univ. of Hawai'i, 40 F.3d
2  1551, 1561 n.17 (9th Cir. 1994) ("Given the obvious incentive in such circumstances for an
3  employer to take corrective action in an attempt to shield itself from liability, it is clear that
4  nondiscriminatory employer actions *occurring subsequent to the filing of a discrimination*
5  *complaint* will rarely even be relevant as circumstantial evidence in favor of the employer."
6  (emphasis added))).  Here, in contrast, the retraction of the verbal warning took place the next
7  day, prior to the filing of any complaint, when Gonzalez notified Associate Warden Renee Baker
8  of the matter.  Gonzalez Dep. 26:12–24, ECF No. 23-2.  Therefore, because Gonzalez suffered
9  no consequences as a result of the verbal warning, the issuance of the verbal warning is not an
10 adverse employment action for the purposes of demonstrating disparate treatment.

### c. Placement on Administrative Duty

12     A reasonable jury may find that the restriction to administrative duty was an adverse
13 employment action.  There is no dispute that Gonzalez did not experience a reduction in pay or
14 benefits as a result of being placed on administrative duty.  Gonzalez Dep. 42:7–43:12, 49:16–
15 50:1.  However, it is equally undisputed that Gonzalez was prevented from being around the
16 other correctional officers and was not permitted to go into the prison facility where the other
17 caseworkers worked.  Gonzalez Dep. 39:1–16, 41:6–22; see Decl. of James Cox ¶ 5, ECF No.
18 23-5.   The Court finds that these restrictions materially affected the terms, conditions, or
19 privileges of Gonzalez's employment or, at a minimum, create a genuine issue of fact for a jury
20 to decide.
21     The Court also finds the facts are in dispute regarding the reason for Gonzalez's
22 placement on administrative duty.  NDOC presents facts indicating Gonzalez was put on
23 administrative duty because of her association with a federal parolee and gang member.  Decl. of
24 James Cox ¶ 5, ECF No. 23-5.  In contrast, Gonzalez presents facts indicating she was told by
25 Sergeant Wagner, one of the training officers, that she "was placed on administrative duty
26 because they didn't want [her] amongst the other correctional officers" and that she was "walking
27 on eggshells," whereupon Sergeant Wagner referred to a dress code and measured her heels.
28 Gonzalez Dep. 39:1–4, 39:19–40:1; 67:11–68:7; 76:15–77:8.  The Court, however, need not

resolve this dispute between the parties. The Court simply finds at this time that Gonzalez has presented sufficient evidence that a reasonable jury could find that NDOC's proffered reason for her termination was pretextual. Thus, Gonzalez' gender discrimination claim may proceed on a disparate treatment theory as to her placement on administrative duty.

### 2. Hostile Work Environment

In order to establish a hostile work environment claim under Title VII, an employee demonstrate that "(1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." Porter v. California Dep't of Corr., 419 F.3d 885, 892 (9th Cir. 2005). In determining whether conduct is sufficiently severe or pervasive to state a claim under Title VII, courts look to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002). An employer's liability depends in part on whether harassers are supervisors or coworkers:

> Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013).

Here, viewing all facts and drawing all inferences in the light most favorable to the nonmoving party, as the Court must, Johnson, 658 F.3d at 960, Gonzalez has demonstrated sufficient facts to support a claim for gender discrimination on the basis of a hostile work environment. This finding is supported by several facts. First, there is the timing of when Gonzalez was placed on administrative duty. She was placed on administrative duty by

1  Associate Warden Baker the next business day after she had complained to Baker about being
2  harassed by her supervisor, Willis, who had sought to enforce a separate dress code for women.
3  Gonzalez Dep. 54–60.  Willis had previously told her in her hiring interview that she was an
4  attractive woman and he was not sure how well this would work out for her in the work setting.
5  Gonzalez Dep. 69:20–25.  Baker also told Gonzalez on the same day she complained about
6  Willis that Gonzalez should simply ignore what others were saying about her.  Gonzalez Dep.
7  56–59.  This advice suggests that Baker was aware of potentially harassing statements being
8  made to Gonzalez.

9  Second, and perhaps most egregiously, Gonzalez, upon being placed on administrative
10  duty, was placed under the direction of a supervisor, Sergeant Wagner, who engaged in
11  physically "humiliating" conduct toward her and who directed verbally offensive comments to
12  her.  Specifically, as previously noted, Wagner told her that she was placed on administrative
13  duty because management at the facility essentially did not "want" her around male coworkers.
14  Gonzalez Dep. 38–40, 67–68.  This statement combined with Willis' prior statement expressing
15  his skepticism that an "attractive" woman could fit into the work environment set the stage for a
16  hostile work environment.

17  Most importantly, after telling her that she essentially did not belong amongst her male
18  coworkers or inmates, Wagner—in his office—engaged in offensive and physically
19  inappropriate conduct.  After expressing his disdain for her presence in the work environment, he
20  measured her heels.  Gonzalez Dep. 40, 66–68, 72, 76–78.  The Court can reasonably infer that
21  Wagner was inappropriately close to Gonzalez physically when measuring her heels.  The Court
22  further notes that the position that he would reasonably have been in to measure her heels—
23  behind her, bent down on the ground, with his face close to her backside or front groin area
24  (intimate parts of her body)—would have been physically intimidating and humiliating for
25  Gonzalez.  Such a physically inappropriate and intimidating act by her supervisor at the time in
26  his office is potentially sufficient unto itself to establish a hostile work environment.

27  Considered independently, each of Gonzalez's allegations may not appear sufficient to
28  survive summary judgment.  However, when viewing these events as a whole, a reasonable jury

could find that Gonzales was subject to unwelcome conduct of a sexual nature sufficient to create an abusive work environment which NDOC failed to appropriately manage and which resulted in tangible employment actions. Consequently, summary judgment on the question of hostile work environment is inappropriate.

### D.  Respondeat Superior

NDOC asks the Court to grant summary judgment regarding Gonzalez's third, *respondeat superior*, cause of action on the basis that "there are no undisputed facts showing a hostile work environment" and, even if there were, NDOC responded adequately. Mot. for Summ. J. 24:21–26. As discussed above, supra section III.C.2, the Court does not adopt NDOC's position on the matter of hostile work environment and consequently declines to grant summary judgment on this basis. However, the Court finds that summary judgment is appropriate on other grounds, discussed below.

*Respondeat superior* is better understood as a theory of liability than as an independent cause of action. See Restatement (Third) Of Agency § 2.04 (2006) ("An employer is subject to liability for torts committed by employees while acting within the scope of their employment."). Courts in this district routinely dismiss *respondeat superior* and vicarious liability causes of action for this reason. See, e.g., Garcia v. Nevada Prop. 1, LLC, 2015 WL 67019, at *3, 2015 U.S. Dist. LEXIS 1606, at *7  (D. Nev. Jan. 6, 2015) ("Respondeat superior is a theory of liability, not a cause of action."); Okeke v. Biomat USA, Inc., 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) ("[V]icarious liability . . . is a theory of liability, not an independent cause of action."); Fernandez v. Penske Truck Leasing Co., L.P., 2012 WL 1832571, at *1 n.1, 2012 U.S. Dist. LEXIS 69596, at *4 n.1 (D. Nev. May 18, 2012) ("Respondeat superior is a theory of liability holding an employer vicariously liable for the torts of its employee, it is not an independent cause of action."). However, Nevada does appear to recognize *respondeat superior* as a cause of action for torts committed by employees. See Rockwell v. Sun Harbor Budget Suites, 925 P.2d 1175, 1179 (1996)

Regardless of whether *respondeat superior* may be an independent cause of action, however, that cause of action cannot proceed in this action for two additional reasons.

1         *Respondeat superior* extends to employers, under certain circumstances, liability for employee-
2     committed torts.  See Nev. Rev. Stat. § 41.130; Nev. Rev. Stat. § 41.745; Rockwell, 925 P.2d at
3     1179–81.  First, Gonzalez acknowledges, "[t]his matter is simply a wrongful termination case . . .
4     ." Resp. 4:6–7, ECF No. 24.  Fittingly, there are no allegations or facts demonstrating tortuous
5     conduct by employees which could in turn give rise to tortious liability on the part of the NDOC.
6     Second, to the extent NDOC might be liable for state-law torts, Gonzalez has already conceded
7     such claims would be barred by Eleventh Amendment immunity.  See supra section III.B.  Thus,
8     an independent cause of action for *respondeat superior* cannot survive.

9         Importantly, *respondeat superior* as a theory of liability *is* available under Title VII in the
10    hostile work environment context.  "[A] tangible employment action taken by the supervisor
11    becomes for Title VII purposes the act of the employer."  Burlington Indus., Inc. v. Ellerth, 524
12    U.S. 742, 763 (1998).  "An employer is subject to vicarious liability to a victimized employee for
13    an actionable hostile environment created by a supervisor with immediate (or successively
14    higher) authority over the employee."  Id. at 765.  In fact, through her quotation of hostile work
15    environment language from Ellison v. Brady, 924 F.2d 872, 881 (9th Cir. 1991), Gonzalez
16    appears to indicate her intention to pursue *respondeat superior* within the Title VII context.
17    Response 17:16–20 ("[E]mployers are liable for failing to remedy or prevent a hostile or
18    offensive work environment of which management-level employees knew, or in the exercise of
19    reasonable care should have known.").  This section of Ellison was in turn quoting from
20    E.E.O.C. v. Hacienda Hotel, 881 F.2d 1504, 1515 (9th Cir. 1989), in which the Ninth Circuit was
21    discussing a "standard to govern the liability of an employer for sexual harassment perpetrated
22    by its supervisory personnel or by co-workers of the Title VII claimant."

23        Accordingly, summary judgment as to Gonzalez's third cause of action for *respondeat*
24    *superior* is granted because *respondeat superior* is not an independent cause of action that may
25    be pursued against NDOC in this action. This does not preclude Gonzalez from arguing that the
26    theory of *respondeat superior* applies within the context of her Title VII Gender Discrimination
27    cause of action.

## IV. CONCLUSION

For the reasons discussed above, Motion for Summary Judgment, ECF No. 23, is GRANTED in part and DENIED in part.

>Gonzalez's second, fourth, firth, and seventh causes of action and her claims for punitive damages are voluntarily withdrawn with prejudice.  Accordingly, summary judgment of these matters is DENIED as moot.

>Summary judgment regarding Gonzalez's first cause of action is GRANTED in part and DENIED in part.  Gonzalez's theories of liability based on disparate treatment for being placed on administrative leave and on hostile work environment may proceed.  Gonzalez's theories of liability for disparate treatment based on termination or any other adverse actions may not proceed.

>Summary judgment regarding Gonzalez's third cause of action is GRANTED.

Dated: August 6, 2015.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT COURT